Casey, Ch. J.,
delivered the opinion of the Court.
By the 9th article of the treaty made with Spain on the 22d day of February, A. D. 1819, it was provided that the United States would cause satisfaction to be made for the losses sustained by Spanish officers and citizens in consequence of the operations of the United States army in 1814. In pursuance of this treaty Congress passed an act, which was approved on the 3d of March, 1S23, to carry this article of that treaty into effect. By the 1st section of this act it was provided that the judges of the superior courts established at St. Augustine and at Pensacola should bo authorized and directed to receive and adjust all claims of the inhabitants of that territory, agreeable to the article of the treaty already recited. The 2d section directed these judges, in all cases in which they found in favor of the claimants, to report the decision in each case, with the evidence upon which it was founded, to the Secretary of the Treasury, “ who, on being satisfied that the same is just and equitable, within the provisions of the said treaty, shall pay the amount thereof to the person or persons in whose favor the same is adjudged, out of any money in the treasury not otherwise appropriated.”
The petition alleges that he presented his claim under the treaty to the judge of the superior court at Pensacola, who made an award in his favor, and reported the same to the then Secretary of the Treasury, who refused to allow the same, upon the ground that it was not embraced by the treaty. That subsequently the Secretary of the Treasury, in ] 852, decided that the claim was just and right and embraced within the treaty; but as there seemed to be a contrariety of opinion upon the subject, he desired the opinion of the .Attorney General in relation thereto. ■ And that the successor of the Secretary of the Trea *148 sury, in 1855, (when this suit was commenced,) declined to carry the decision of his predecessor into effect. What the views of the Attorney General on the subject were, or why the Secretary of the Treasury did not pay the claim in 1852, are not stated in the petition.
To this petition the solicitor for the United States has demurred, and as the.principal cause of demurrer assigns that, by the provisions of the act of Congress upon which the claim is founded, the award made by the commissioner, together with the evidence, was to be submitted to the Secretary of the Treasury, and unless he should be satisfied that the same was “just and equitable within the provisions of the treaty,” the award should not be binding on the United States. And upon the claimant’s own averment it is shown that the Secretary to whom it was submitted decided it was not within the provisions of the treaty.
We are relieved from any extended examination of this' case by the clear and able opinion of Mr. Chief Justice Taney, in the case of .the United States v. Ferreira, 13 How., 40. That case arose under this same act. After having been passed upon by the district judge of Florida, the attorney for the United States prayed an appeal to the Supreme Court of the United States. They decide that the judges in acting under this law were commissioners, and the conclusion reached is called an award. The court held that no appeal lay to the Supreme Court, but that the power conferred on the Secretary of the Treasury was conclusive. They say: “Nor can we see any ground for objection to the power of revision and control given to the Secretary of the Treasury. When the United States consent to submit the adjustment of claims against them to any tribunal, they have a right to prescribe the conditions on which they will pay. And they had a right, therefore, to make the approval of the award by the Secretary of the Treasury one of the conditions upon which they would agree to be liable. No claim, therefore, is due from the United States until it is sanctioned by him; and his decision against the claimant for the whole or a part of the claim as allowed by the judge is final and conclusive. It cannot afterwards be disturbed by an appeal to this or any other court, or in any other way, without the authority of an act of Congress.”
The allegation contained in the petition, that a subsequent Secretary reviewed and reversed the decision of the Secretary to whom it was transmitted in the first instance, cannot avail the claimant. Whatever he may have done in this matter was clearly beyond his authority. The act contemplates that the Secretary to whom it was transmitted should decide the matter. Had he died or gone out of office before he *149 had made any decision upon the case, his successor could doubtless have acted upon it. But the decision being once made, there was an end of the matter. It was, in the language of the Supreme Court, just quoted, final and conclusive, and could only be disturbed after that by an act of Congress.
Mr. T. M. Blount, for the claimant.
Mr. J. A. Bingham, United States Solicitor, for the government.
That the head of a department cannot, in a matter involving judgment and discretion, reverse the decision and action of his predecessor, even in a matter relating to the general affairs and management of the business of the department, was held by the Supreme Court in The United States v. The Bank of Metropolis, 15 Pet., 401. Much less could he do so where the duties to he performed were of a quasi-judicial nature, and were expressly made conclusive by the statute which conferred the power to act in the premises.
These views make it clear, we think, that this claimant, on his own showing, has no valid claim.
We, therefore, sustain the demurrer and dismiss the petition.